ELLEN G. STONE, Admx.,

*vs.*

LEWISTON, BRUNSWICK & BATH STREET RAILWAY.

Androscoggin.    Opinion November 29, 1904.

*Negligence.   Evidence.   Instruction.   Custom.   Exceptions.*

When the evidence is conflicting and the question of liability and damages
    is one that is peculiarly within the province of the jury, and the evidence
    does not convince the court that the jury were clearly wrong, a motion for
    a new trial will be overruled.

A requested instruction, although proper, may be rightfully refused when
    the presiding justice has covered the whole ground of the instruction in
    his charge.   He is not required to give it again.

In an action against a street railway company to recover damages for per-
    sonal injuries received by the plaintiff's intestate, testimony is admissible
    upon the question of the negligence of the defendant to show that it was
    the custom of the defendant to permit passengers to ride on the running
    board of its cars, although there was no claim that this custom was known
    to the plaintiff's intestate.

Exceptions do not lie to the exclusion by the court of photographs.   It is in
    the discretion of the presiding justice to admit or exclude photographs.

Motion and exceptions by defendant.    Overruled.

Action against defendant company for negligently causing death of
plaintiff's intestate.   There was a verdict for the plaintiff for $5000.

Defendant filed a motion for a new trial, also exceptions to the admission and exclusion of certain evidence and to the refusal of the presiding justice to give certain instructions.

The facts appear in the opinion.

*D. J. McGillicuddy and F. A. Morey*, for plaintiff.

*W. H. Newell and W. B. Skelton*, for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J. This is an action on the case to recover damages for personal injuries received by the plaintiff's intestate, Richard Stone, while riding upon the defendant's car. The verdict was for the plaintiff in the sum of $5000. The case comes up on motion and exceptions.

The facts, upon which there is but little controversy, show that the plaintiff's intestate was a passenger on the defendant's car leaving Sabattus for Lewiston, on August 10th, 1902, at about 8.30 o'clock in the evening. It was an open car with two running boards, and, there being more passengers upon the car than could be seated, the plaintiff's intestate rode upon one or both of these running boards, either sitting or standing, from Sabattus to the place of the accident, near the residence of Dr. Alonzo Garcelon, about a mile from the city of Lewiston. As the defendants state in their brief, "at the point where the accident is alleged to have taken place, there was an elm tree standing upon the southerly or pole side of the track, at a distance of seven inches from the outer edge of the lower running board, fourteen inches from the outer edge of the upper running board, and twenty-two inches from the edge of the car floor. The tree leaned somewhat away from the track. The lower running board is six and one-half inches in width and the upper running board is seven inches." The plaintiff's contention is that when near this elm tree, Stone stood up, leaned in as if to speak to his wife, who was sitting in a seat in the car, and that when he leaned back he struck the elm tree, was knocked to the ground, fell under the car, was run over and received injuries from which he died the next day.

There was some dispute in regard to the manner of the accident, but one witness testified positively that it occurred as the plaintiff contended and the jury must have so found and their verdict upon this point must control.    While the conductor avers that he said, "You will find room inside, and don't ride on the running board," it does not appear that Stone heard it or was warned against the danger of trees or poles, but was allowed to ride upon the running board in the darkness without instructions or caution.    It seems that, on this evening, there were some ten or more passengers than could be seated and the most of them were permitted and did ride on the running board.    It also appears that it was the custom of the defendant to allow passengers to ride, between Lewiston and Sabattus, on the running board.    The details of these facts, the question of due care on the part of the deceased and a view by the jury of the track, the tree and the car, showing the exact relation of the car to the tree, were all submitted to the jury, with proper instructions and they found the defendant liable, and a careful examination of the testimony does not convince us that they were so clearly wrong as to warrant us in setting the verdict aside upon the question of liability.

The defendant further contends that, admitting liability, the verdict is clearly excessive and therefore erroneous.    The verdict was a large one, but the suffering for which it was given was intense beyond description.    It is clearly distinguishable from *Ramsdell* v. *Grady*, 97 Maine, 319, cited by the defendant.    In that case, as in the case at bar, "only such damages can be allowed as the deceased sustained in his lifetime."    In the Ramsdell case the plaintiff's intestate was already ill with diptheria when the physician was called and might have suffered and died even if the physician had diagnosed the case as diptheritic; and the plaintiff's right to recover damages only includes "such injury, expense and suffering as was due to the defendant's default in excess of what they would have been had the case been properly diagnosed and treated."

But in the case at bar, the deceased's suffering and death were due not in part but wholly to the negligence of the defendant.

The evidence, which is almost too shocking to quote, shows that both of his limbs were so mangled and torn that they were merely

hanging by shreds of flesh and muscle. This was at nine o'clock in the evening. He suffered amputation of both legs and lived under circumstances of the most excruciating physical and mental pain until between two and three o'clock the next morning. In addition to these injuries the pelvic bone was also broken. He was conscious nearly all the time, not only suffering great physical pain, but with a full realization of his hopeless condition.

We can hardly conceive of a case capable of involving keener mental suffering. He was a young man, less than thirty in the full vigor of life and health. He had been married a little over a year and there had come into his life, as the result of this union, a little child, at this time about a month old. With the bride of a year and a helpless infant dependent upon him, in the vigor of youth, with a future bright in hope, he was yet fully aware that in a few hours his inevitable doom was death. One of the physicians says, "he looked up into my face and asked if I thought he could live. And I replied that I was very sorry to tell him that I did not think he could; and he made the remark that it was very hard to die, or something to that effect." We think this man suffered about all that man can suffer in this world including death itself. We cannot say that the verdict is so excessive as to require us to set it aside.

The defendant's first exception was to the refusal of the presiding justice to give the following instruction upon the question of due care on the part of the plaintiff's intestate:

"If the jury shall find that the plaintiff's intestate voluntarily assumed the position in which he was riding, sitting upon the running board of the car and bringing portions of his body outside the line of the car and running boards, when he could have ridden upon the rear or front platform of the car, taking into account the rate of speed at which the car was going, the darkness of the night and the insecurity of the plaintiff's intestate's position on the running board, the jury have the right to consider all of these facts as bearing upon the question whether at the time and place of the accident the plaintiff's intestate was in the exercise of such care and prudence as an ordinarily careful and prudent person would exercise under like circumstances." But a careful reading of the charge discloses that the

presiding justice did, in substance, give all the elements of the request. After having instructed the jury, without objection or exception, upon the question of fault on the part of the defendant, he proceeded as follows with respect to the duty devolving upon the plaintiff's intestate:

"If you find they were not in fault, then your verdict would be for the defendant. If you think they were in fault by running their cars too near the tree and the post or so near as to endanger the passengers on the running board, and that they allowed passengers to ride upon the running board and took fare for it, then you will come to the question whether or not Mr. Stone was in the exercise of such care as a prudent man would exercise under the circumstances for his own protection. If he was not, and that failure to exercise care contributed to the injury, then your verdict would be for the defendant; but if the defendant was in fault as I have stated, and if Mr. Stone was in the exercise of due care, and if he was knocked off of the car by striking the tree or the post, and that was so near as to constitute a fault on the part of the company, then the plaintiff is entitled to recover." But the instructions upon this point did not stop here. The justice, in the last paragraph of his charge, gave the following: "I am asked to instruct you, gentlemen, that the burden of proof is upon the plaintiff to show by a fair preponderance of the evidence that at the time of the accident and injury to the plaintiff's intestate he, the plaintiff's intestate, was in the exercise of such care as a prudent man would have exercised under all the circumstances; and in determining this proposition the jury have the right to take into account the darkness of the night, the position which the plaintiff's intestate was sitting or standing upon the running board of the car at the time of the accident and injury to him, and the fact whether or not a prudent man would under all the circumstances have been riding upon the running board of the car at the time and place of the accident. I give you that, and I have practically given it all before."

The above instructions sufficiently covered the subject matter of the defendant's request.

The defendant's second exception is to the admission of testimony tending to show that it was the custom of the defendant company to permit passengers to ride on or upon the running board of the cars between Sabattus and Lewiston, without any claim that this custom was known to the plaintiff's intestate.   This evidence may have had but little weight, but it was competent upon the question of the negligence of the defendant company.   If neither trees nor poles were near enough to the track to possibly come in contact with a passenger, however situated upon a passing car, it might not be negligence with respect to these objects to permit a person to ride on the running board without any warning.   But on the other hand, if trees or poles were situated so near to the track as to possibly come in contact with a person riding, in any manner, upon the running board, it might become a matter of gross negligence to permit a passenger to so ride without caution.

The defendant's last exception is to the exclusion by the court of certain photographs showing, as the defendant claimed, the tree in question, the track, the car on the track by the tree, and a man on the car in the positions in which the testimony of the different witnesses tended to show that Stone was at the time of the accident.   It is within the discretion of the presiding justice to admit or exclude a photograph.   " Whether it is sufficiently verified, whether it appears to be fairly representative of the object portrayed and whether it may be useful to the jury are preliminary questions addressed to him, and his determination thereon is not open to exceptions."   *Jameson* v. *Weld,* 93 Maine, 354.

*Motion and exceptions overruled.*